**FILED**

2006 May-26  AM 08:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
DENISE SIMMONS,                  }
                                 }
       Plaintiff,                }
                                 }      CIVIL ACTION NO.
v.                               }      05-AR-0875-S
                                 }
FUJICOLOR PROCESSING, INC.,      }
                                 }
       Defendant.                }
```

---

**MEMORANDUM OPINION**

The court has before it two motions for summary judgment, and a motion to strike portions of an affidavit submitted by plaintiff, Denise Simmons ("Simmons").  Simmons asserts two claims against Fujicolor Processing, Inc. ("Fujicolor"), for interference with her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*: one for violating her right to take FMLA leave by counting FMLA-qualifying absences against her in Fujicolor's disciplinary scheme, and one for denying her right to reinstatement upon return from FMLA leave.  Simmons also brings a claim for retaliation in response to her exercising of rights under the FMLA. Simmons' motion seeks summary judgment only as to the interference claims, while Fujicolor seeks summary judgment on every claim.  For the reasons to follow, Simmons' motion for summary judgment is due to be denied in full.  Fujicolor's motion is due to be granted to the extent that it seeks summary judgment on Simmons' claims for interference with her right to be reinstated and for retaliation. Fujicolor's motion to strike is due to be mooted.

### Facts[1]

Fujicolor operated a film processing facility in Birmingham, Alabama, where, as of June 2004, Simmons had worked as a machine operator and film splicer for more than one year.  She worked five days per week, with Tuesdays and Saturdays normally scheduled as her days off.  Ruby Meads ("Meads"), Simmons' supervisor, set the employees' weekly schedules and posted them on a calendar.  Prior to June 2004, Simmons had received a series of warnings for being late for her shift.  She had also been absent from work without an excuse on seven occasions between August 2003 and May 2004: August 10, 2003; November 11, 2003; November 12, 2003; January 19, 2004; April 21, 2004; April 22, 2004; and May 31, 2004.

On the morning of Sunday, June 6, 2004, Simmons was involved in a car wreck.  Later that day, Simmons went to the emergency room at St. Vincent's Hospital, where she received x-rays.  Dr. Patricia Tepper reviewed the x-rays and found no fractures or abnormalities, and no subluxation of the spine.  Dr. Tepper released her to return to work on June 8, 2004, and chose not to admit her for inpatient care.  Simmons returned to St. Vincent's on two occasions during

---

[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).  In accordance with this standard, this statement of facts includes both undisputed facts and, where there is a dispute, the facts according to the non-movant's evidence, and the legitimate inferences therefrom.

that month, June 14 and June 16.  In addition to the treatment Simmons received at St Vincent's, she visited the Kirklin Clinic at the University of Alabama at Birmingham on June 10, June 18, June 28, and July 8.  On each occasion, Dr. Anna Davis treated Simmons for the complications arising from the car wreck.  Simmons also solicited the help of Dr. Todd Sayers, a chiropractor, on numerous occasions during the same time period.

Simmons called Meads on June 6, 2004, leaving a voicemail informing Meads of the accident, and stating that she would be bringing a doctor's note excusing her from work.  Neither Meads nor Simmons remember any of the other details of the voicemail. Simmons missed work on both June 6 and June 7, but did not communicate with Meads or anyone else at Fujicolor other than the aforementioned voicemail, even though she was aware that Fujicolor's personnel policies, as outlined in the Fujicolor Employee Field Handbook, required that she contact her supervisor thirty minutes prior to her shift if she did not plan to attend work.  For that reason, Simmons' absence on June 7, 2004, was considered to be unexcused by Diane Rasco ("Rasco"), Fujicolor's Human Resource Manager.

The complications from Simmons' car wreck continued to bother her throughout June, July, and August 2004.  Rasco considered Simmons to be unexcused on June 11, 2004, because Simmons gave no advance notice that she would not attend work on that day.  On July

9, 2004, Simmons was also marked as unexcused on a list of absences compiled by Rasco, but Rasco listed her status on this day as "absent (neck problems)."  On four occasions in July, Simmons worked the beginning of her shift, but left without notifying Meads: July 1, 2004; July 5, 2004; July 7, 2004; and July 8, 2004. On July 16, 2004, Rasco again listed Simmons as a "no call, no show."

On July 20, 2004, Simmons filled out a Leave of Absence Request Form, as required by the Fujicolor handbook, and submitted a note from Dr. Sayers in support of her request.  Fujicolor granted Simmons' request for leave, effective from July 16 to August 20.  On August 17, 2004, Rasco sent a letter to Simmons reminding her that she was to return on August 20, and paraphrasing the language of the leave request form: "If you are unable to work on 8/20/2004, you must advise your Supervisor in writing, specifying your reason for not returning to work on the date specified by your physician."  Two days later, Simmons asked for and received an extension of her leave, based on Dr. Sayers' opinion that she should be "off till August 31, 2004."  During this time period, Meads observed in emails to Rasco and others that Simmons "looked like she was feeling MUCH better," and later that Simmons' situation was "getting a little ridiculous."

Because she did not contact Fujicolor to request an additional extension of her FMLA leave, Fujicolor expected Simmons to return

4

to work in time for her shift on August 31, 2004.  Fujicolor's
facility was open that day, and work was available for Simmons if
she had been present.  Simmons did not in fact return to work until
September 1, 2004, claiming that she was not required to work on
August 31 because it was a Tuesday, her normal day off.  Simmons'
name did not appear on the work calendar kept by Meads on that day,
because it had been removed from the entire calendar upon the
granting of her FMLA leave.  Meads informed Rasco that Simmons had
not returned to work as scheduled, possibly misrepresenting to
Rasco during that conversation that Simmons' name appeared on the
work calendar for August 31.  Rasco then informed Simmons that her
employment had been terminated for repeated violations of
Fujicolor's personnel policies, including the August 31 absence.
The Fujicolor handbook prescribes termination as the appropriate
remedy when any employee accrues ten absences within a twelve-month
period.

## *Analysis*

As a threshold issue, the court determines that Simmons
qualifies for the protections afforded by the FMLA.  The FMLA
entitles an employee to twelve weeks of leave per year because of
"a serious health condition that makes the employee unable to
perform the functions of the position of such employee." 29 U.S.C.

§ 2612(a)(1)(D).[2]   FMLA regulations define a "serious health condition" to be one involving inpatient care or "continuing treatment by a health care provider." 29 C.F.R. § 825.114(a)(2). The parties agree that Simmons did not require inpatient care as a result of the car wreck, but disagree on whether she received continuing treatment from a qualifying health care provider. However, the evidence in the summary judgment record resolves this question in Simmons' favor.  As is relevant to Simmons, a serious health condition must involve a "period of incapacity . . . of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves . . . [t]reatment two or more times by a health care provider." 29 C.F.R. § 825.114(a)(2)(I).  Simmons carries her burden in this respect with the introduction into the record of a number of doctor's notes generated in the wake of her car wreck. At the very least, Simmons' proves her period of incapacity with Dr. Davis' note of June 10, 2004, stating that Simmons "was given work excuse for June 10 through June 13."  The only reasonable interpretation of this statement is that Dr. Davis had determined, after examining Simmons, that she was incapable of working on those

---

[2] Simmons does not allege, nor could she, that any of the other three conditions qualifying an employee for FMLA leave are relevant to her. Furthermore, there is no disagreement between the parties over whether Fujicolor employs the requisite number of employees to bring it within the FMLA's purview, or whether Simmons meets the minimum annual hours and years of employment to qualify for the FMLA. *See* 29 U.S.C. § 2611.

four calendar days.[3]  Why Simmons failed specifically to invoke the
June 10 note--relying instead on a self-serving affidavit and
irrelevant deposition testimony--is inexplicable.  Just as Simmons
shows her incapacity with the June 10 note, she also proves that
she subsequently underwent two or more treatments by a health care
provider because she returned three times to be treated by Dr.
Davis at the Kirklin Clinic.[4]  This series of visits, combined with
the diagnosis on June 10, establish the minimum requirements for an
FMLA-qualifying health condition, without regard to any other
treatment Simmons may have received.  Therefore, Simmons' illness
qualifies for the FMLA, and the court addresses her claims for
interference and retaliation in turn.

---

[3] The deposition testimony Fujicolor offers to contradict this conclusion
is clearly the result of a confused witness, as evidenced by the following
colloquy:
> Question: You were never incapacitated for more than three
> consecutive days, is that correct?
> Answer: Yes.
> Question: You weren't pregnant during the July-August period,
> correct?
> Answer: No.

Just as Simmons did not intend to argue that she was pregnant during the time in
question, she did not intend to deny that she had been incapacitated for more
than three days.  That this answer directly contradicts Simmons' position at
every other point of the litigation reinforces the conclusion that she was
confused by the phrasing of the question.

[4] As Fujicolor astutely notes, the treatment performed on Simmons by her
chiropractor, Dr. Sayers, is outside of the realm contemplated by the FMLA,
because it did not consist of "manual manipulation of the spine to correct a
subluxation as demonstrated by X-ray to exist." 29 C.F.R. § 825.118(b)(1).
However, this argument is academic because Simmons' has presented enough evidence
of her continuing treatment by other physicians to support the court's
determination that she suffers from a "serious health condition."

## I.   Interference

Because Simmons is qualified for the FMLA's protection, she "need only demonstrate by a preponderance of the evidence that [s]he was entitled to the benefit denied" to prove interference with her FMLA rights. *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001).  Simmons brings two interference claims.   First, she alleges that Fujicolor interfered with her right "to take leave under the FMLA," even though her complaint contains no factual allegations relevant to such a claim.[5]  Simmons' summary judgment materials make it clear that this claim refers only to Fujicolor's counting of allegedly FMLA-qualifying absences against her pursuant to its disciplinary policy.  FMLA regulations provide that "employers cannot use the

---

[5] Simmons complaint alleges: "The defendant FUJICOLOR interfered with Mr. [sic] Simmons's rights to take leave under the FMLA and to be reinstated to the same or equivalent position by terminating her in retaliation for taking Family Medical Leave."  Fujicolor asserts that this language does not state a claim for interference with Simmons' right to take leave or for interference with her right to be reinstated, only for retaliatory termination.    The court disagrees. Although Simmons' complaint may not be artfully drafted, it satisfies the liberal notice pleading requirements of this court.

Furthermore, Fujicolor argues that Simmons' claim for interference with the right to take leave can *only* be conceptualized as a retaliation claim.  The cases upon which Fujicolor relies are inapposite. *See Strickland*, 239 F.3d at 1206-07 (holding that an employee brought both an interference and a retaliation claim related to his reinstatement); *Barnes v. Ethan Allen*, 356 F. Supp. 2d 1306, 1310-11 (S.D. Fla. 2005) (construing an FMLA claim as retaliatory because the termination occurred "several months" after the employee's reinstatement to her former position upon return from leave); *Norman v. Southern Guar. Ins. Co.*, 191 F. Supp. 2d 1321, 1332-33 (M.D. Ala. 2002)(holding that an FMLA claim should be characterized as retaliatory "to the extent that . . . [the employer] intentionally designated, that is, manipulated, [the employee's] FMLA leave in such a way that she would be in violation of the company's absentee policy"). In this instance, the court has no reason not to accept Simmons' characterization of her claim. *See Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (accepting plaintiff's characterization of her claim as one for interference with FMLA rights although it could also be construed as a retaliation claim).

taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies." 29 C.F.R. § 825.220(c).   Any violation of these regulations, in and of itself, constitutes actionable interference with FMLA rights. *See* 29 C.F.R. § 825.220(b).  Therefore, the court looks to the specific absences that Simmons alleges Fujicolor wrongly counted against her.  If she can prove that any of these should have been covered by the FMLA, Simmons is due to be granted summary judgment on her claim for interference as it relates to the right to take FMLA leave for that specific period of time.

Simmons disputes the validity of four absences that Fujicolor relied upon in the decision to terminate her: June 7, 2004; July 9, 2004; July 11, 2004; and July 16, 2004.[6]  The determinative issue in each instance is whether Simmons gave sufficient notice to Fujicolor that she intended to take FMLA leave.  Simmons cites to 29 C.F.R. § 825.302(c) for the proposition that she "need not expressly assert rights under the FMLA or even mention the FMLA" in order to invoke her FMLA rights.[7]  This may be correct, but Simmons still must "state that leave is needed." *Id.; see also Martinez v.*

---

[6] These are in addition to August 31, 2004, which will be discussed below as it pertains to Simmons' right to reinstatement.

[7] Simmons also argues that any deficiency in her notification to Fujicolor is excused because Fujicolor did not properly inform her of her rights under the FMLA.  Such an argument is not persuasive when the record contains uncontroverted evidence that Simmons received, read, and understood the section detailing the FMLA in the Fujicolor Employee Field Handbook.

*Mercedes Home Realty, Inc.*, 2005 WL 2647884, *5 (M.D. Fla. 2005) ("The bottom line, however, is that while the employee need not cite to the FMLA, she must clearly state that leave is necessary."); *Peters v. Cmty. Action Comm., Inc.*, 977 F. Supp. 1428, 1436 (M.D. Ala. 1997).

Furthermore, an employee must "comply with the employer's usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. § 825.302(d).  The FMLA guarantees leave to qualified employees, but it does not grant them license to violate company procedures.  According to Fujicolor's employee handbook, "[i]f an employee is unable to report to work when scheduled, they [sic] are required to make direct contact with their [sic] supervisor or a member of management at least 30 minutes prior to the scheduled work time."[8]  At first blush, Fujicolor's thirty-minute notice requirement appears to be in conflict with the FMLA's provisions on unforeseeable absences. Under FMLA regulations, employees must give notice "as soon as practicable under the facts and circumstances of the particular

_____

[8] In addition, the Handbook requires that, if FMLA leave is requested, an employee "must complete a request form for Leave of Absence and return to [her] manager or the Human Resource Representative for approval."  However, such a requirement conflicts with 29 C.F.R. § 825.303(a), in that "written advance notice pursuant to an employer's internal rules and procedures may not be required" when an illness is not foreseeable.  Therefore, any failure by Simmons prospectively to obtain written approval for her absences must be disregarded if that the absence was not foreseeable.  The record is unclear on this point.  Due to the unexpected car wreck and intermittent nature of Simmons' subsequent illness, the court will not hold that she did not give sufficient notice to invoke the FMLA on the four days which she disputes solely because she did not obtain prior *written* approval.

case," that is, "within no more than one or two working days of learning of the need for leave." 29 C.F.R. § 825.303(a).  This apparent conflict was recently the subject of a reasoned opinion by Judge Myron H. Thompson of the Middle District of Alabama.

> Recognizing that the FMLA was passed by Congress to balance not only the need of employees to take reasonable leave for serious health reasons, but also the legitimate interests of employers, this court rejects [the] interpretation, which would, in effect, prohibit employers from requiring advance notice before the shift begins in emergency situations, even if the employee could have provided such notice.  Common sense dictates that this would not be a reasonable way to run a business: Without some notice of intended leave, employers cannot make reasonable arrangements to fill in for the employee who is absent on FMLA leave.  Surely Congress did not intend that employees could take FMLA leave willy-nilly, regardless as to whether they were able to give notice before their workday began, as long as they gave notice within two days of learning of the need for the leave.  Such an interpretation of the regulations is therefore not reasonable.

> Balancing the legitimate interests of both employees and employers, the court distills the following legal principles from the two regulations to the extent they apply to an employer's one-hour-before-shift notice requirement: If it is not practical for an employee to give 30-days advance notice of the need for leave, the employee must give notice as soon as practicable under the facts and circumstances.  **The FMLA, therefore, allows an employer to require notice one hour before the employee's shift begins, as long as it is reasonable to expect the employee, under the individual circumstances, to give such notice.**  But if the employee cannot meet the one-hour requirement, then, under the FMLA, the employee must give notice as soon as practical, up to one or two days after learning of the need for leave, unless giving notice within the one- or two-day period is impractical as well.

*Spraggins v. Knauf Fiber Glass GmbH, Inc.*, 401 F. Supp. 2d 1235, 1239-40 (M.D. Ala. 2005) (emphasis added and citations omitted).

The court finds Judge Thompson's analysis exceedingly persuasive, and can find no logical distinction between a thirty-minutes-prior requirement and a one-hour-prior requirement.

The court therefore adopts the rule in *Spraggins* and applies it to the instant facts.  For the days of June 11, 2004, and July 16, 2004, Rasco counted Simmons as a "no call, no show."  There is no evidence in the record to contradict Rasco's designation or to show that Simmons gave timely notice to her supervisor or anyone else at Fujicolor that she would be missing her shift on those days.  That she was granted FMLA leave retroactive to July 16 does not cure her deficient notice.  Therefore, the court looks to whether it was reasonable to require Simmons to call ahead on those days.  It is the court's determination, after reviewing the summary judgment record, that Fujicolor could reasonably impose such an advance notice requirement on Simmons under the circumstances.  There is no suggestion that Simmons was so incapacitated on either day that she could not use the telephone, nor is there any evidence that she required emergency medical attention on those days.  The record likewise does not show that Simmons suffered from the type of sudden illness which would render her unable to predict her working status more than thirty minutes into the future.[9]  Simmons

---

[9] This conclusion is despite the fact that she might not have been able to anticipate her absences in time to obtain prior *written* authorization, as discussed in footnote eight.  On the evidence in the record, there is a question as to whether Simmons' condition was unpredictable enough that she could not provide notice in time to get written approval, ostensibly requiring as much as twelve hours of advance notice, but not as to whether her condition was so

has introduced no evidence upon which a reasonable jury could conclude that she could not provide advance notice of her absences on June 11, 2004, and July 16, 2004.  As Simmons' claim for interference relates to those absences, Fujicolor's motion for summary judgment is due to be granted, and Simmons' motion is due to be denied.

While summary judgment is appropriate on Simmons' interference claim regarding two of the absences counted against her, it is inappropriate as to the absences on June 7, 2004, and July 9, 2004. As to the former, there is evidence that Simmons attempted to contact Meads, leaving a voicemail at some time on June 6, 2004, to inform Meads of the car wreck and to tell her that Simmons would be bringing a doctor's excuse for missing work.  The record does not reflect the duration of the absence requested by Simmons at this time, or what amount of time the doctor's excuse would cover.  The court must therefore assume for purposes of summary judgment that Simmons' voicemail message on June 6 provided sufficient notice of her FMLA-qualifying absence on June 7.  As to the latter absence, Rasco marked Simmons as being "absent (neck problems)" on July 9, 2004.  There is no other evidence in the record on this point.  A reasonable jury could infer from this notation that Simmons called ahead of time, and that her reference to neck problems triggered Fujicolor's duty further to inquire into Simmons' condition because

_____

erratic that she could not give thirty minutes of advance notice.

the company was already on notice of her car wreck. Because of these genuine issues of material fact, neither party is due summary judgment on Simmons' interference claim as it relates to the absences on June 7, 2004, and July 9, 2004.

Simmons' second claim of interference with her FMLA rights asserts that Fujicolor denied her the right to be reinstated to her former or an equivalent position upon return from leave in violation of 29 U.S.C. § 2614(a)(1). While Simmons bears the burden of proving her entitlement to reinstatement, Fujicolor not only relies on Simmons' failure to have met her *prima facie* burden, but, as an affirmative defense, has demonstrated as a fact that it would have "discharged [Simmons] even had she not been on FMLA leave." *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1354 (11th Cir. 2000). Although the law does not require that Simmons introduce comparator evidence to carry her burden, such evidence, if it had been presented, might have gotten her a jury trial on her alleged right to be reinstated.

Fujicolor claims, as it did when it first informed Simmons of her termination, that Simmons' previous violations of company policy coupled with her failure to return to work on August 31, 2004, called for her termination and her non-reinstatement. As to Simmons' absence on August 31, the Leave of Absence Request Form and the letter from Rasco, when read in conjunction with Dr. Sayers' extension of Simmons' leave "till August 31, 2004,"

14

establish that Simmons was due back to work on that date, not the
next day.  The language of the Leave of Absence Request form signed
by Simmons is clear:

> **PROVISIONS OF LEAVE:** I understand if I do not return to
> work on the above date, nor contact Human Resources prior
> to the above date of return, I will be voluntarily
> resigning my employment.
>
>      I further understand the date of my return to work,
> following medical leave, will be determined by my
> physician.  My release to work must be in writing and
> signed by the attending physician.  If I do not return to
> work on the date specified by the physician as the date
> I am physically able to return to work, I must advise
> Human Resources, in writing, of my reason for not
> returning.  If I do not contact Human Resources on or
> before the release date, I will be voluntarily resigning
> my employment.

Simmons does not dispute that Dr. Sayers cleared her to return to
work on August 31, 2004, or that she did not contact anyone with
Fujicolor to inform them that she would not be working on that day.
Simmons counters, however, that August 31 was a Tuesday, her
typical day off, and she returned to work on the first *regularly
scheduled* day after she was released for work.[10]  Such an argument
might be persuasive if it did not directly contradict the language
of the Leave of Absence Request Form.  There is no ambiguity in

---

[10] Simmons also introduces evidence that her name did not appear on the
calendar kept by Meads for August 31, 2004.  This omission is hardly persuasive
evidence, however, because Simmons was not on the calendar for the entire week,
having been removed upon the approval of her FMLA leave.  If being off the
calendar for August 31 means that Simmons need not return to work on that day,
then the logical conclusion is that Simmons did not have to report to work on
September 1 either.  Neither party alleges that this is the case.  This piece of
evidence cannot create a genuine issue as to whether Simmons' absence was
excused, especially when she has introduced no evidence that she knew whether or
not her name appeared on the written calendar until the discovery phase of this
litigation.

"the date specified by the physician as the date I am physically able to return to work."  Simmons' analogy to a "normal office setting" is also unavailing.  If an employee is released by her physician for work on a Saturday even though the entire office is closed on Saturdays, it might be unreasonable to require her to be present on that day, but it does not follow that an employer like Fujicolor cannot require an employee to return to work or call ahead on a day when the company is open for business, and work is available to her.  The conclusion is inescapable that Simmons' unexcused absence on August 31 was a violation of Fujicolor's leave policies.

Simmons also disputes the other justification for her termination: the "repeated abuse" of Fujicolor's personnel policies.  Although the record indicates that this abuse included recurring tardiness, frequent "no call, no shows," and walking off the job without notification to her supervisor, Simmons contests only the four absences discussed above.  Even though there are colorable issues regarding two of these absences, the record reveals that the termination decision is more than adequately supported by Simmons' legitimate absences and other violations.  Fujicolor's Employee Field Handbook provides for termination upon an employee's accruing ten absences within a twelve-month period, and defines an "absence" to include "[l]eaving the job prior to the end of a schedule [sic] work shift and arriving late . . . without

16

the approval of your supervisor."  Simmons accrued seven unexcused absences in the ten months preceding the car wreck.  Because these absences occurred prior to Simmons' serious health condition, they are not protected by the FMLA.  For these reasons, the FMLA does not excuse her absences on June 11, 2004; July 16, 2004; and August 31, 2004.  Furthermore, Rasco's records indicate, without contradiction, that Simmons worked part of her shift on four days in July, but left without informing her supervisor.  These four days are not protected by the FMLA. *See Strickland*, 239 F.3d at 1207; *Norman*, 191 F. Supp. 2d at 1330 ("[I]f the employee gives no reason for her absence, but merely walks off the job, the employer is not charged for failing to give FMLA leave when it might otherwise be appropriate.").  It is irrelevant that Fujicolor did not explicitly include these walk-off days in its computation of Simmons' absences, because any proper basis for her termination proves Simmons had no right to be reinstated.  Based solely on these absences, it is undeniable that Simmons did not fulfill Fujicolor's minimum attendance requirements, and therefore Fujicolor was justified in taking the action prescribed by the handbook for excessive absenteeism.  For that reason, Simmons has not created a genuine issue as to whether she had the right to be reinstated upon her return to work on September 1, 2004, and summary judgment is due to be granted to Fujicolor on Simmons' interference claim in this respect.

**II.  Retaliation**

In addition to her claims for interference, Simmons asserts a claim for retaliatory discharge in violation of the FMLA.  This claim requires proof that Fujicolor "intentionally discriminated against [Simmons] in the form of an adverse employment action for having exercised an FMLA right." *Strickland*, 239 F.3d at 1207.  The *McDonnell Douglas* burden-shifting framework is applicable to FMLA retaliation claims. *Id*.  Therefore, if Simmons can prove her *prima facie* case, the burden shifts to Fujicolor to articulate a legitimate, nondiscriminatory reason for the termination.  If Fujicolor meets this burden of production, the onus shifts to Simmons to prove that Fujicolor's reason is pretextual.  Simmons initial burden requires proof that "(1) [s]he engaged in a statutorily protected activity; (2) [s]he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Strickland*, 239 F.3d at 1207.  Fujicolor's motion for summary judgment is due to be granted because Simmons has not carried her *prima facie* burden, and because she cannot create a genuine issue as to Fujicolor's legitimate, nondiscriminatory reasons for her termination.

Simmons has proven the first two elements of her *prima facie* case.  She engaged in protected activity, if at no other time, when she requested and received FMLA leave from July 16, 2004, to August 20, 2004 (subsequently extended through August 30, 2004).  Simmons'

18

termination is the archetypal adverse employment action.  As to the third element, causation, Simmons relies only on the temporal proximity of her FMLA leave and termination.  However, as discussed at length, Simmons' absence on August 31, 2004, was not an FMLA-qualifying absence, because her leave had only been approved by Dr. Sayers through August 30, 2004.  Any inference based on timing would therefore be drawn in favor of Fujicolor, because Simmons' unexcused absence occurred closer in time to the termination than did her FMLA leave.  Although timing alone may support an inference of causation, *see Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986), the inference must be drawn against causation when another event enjoys closer proximity with the adverse employment action than does the protected conduct.  For this reason, Simmons has failed to prove her *prima facie* case, and summary judgment in favor of Fujicolor is appropriate on this basis alone.

Even assuming *arguendo* that Simmons has carried her *prima facie* burden, she cannot rebut the legitimate reasons for her termination: Simmons' repeated violations of personnel policies and her absence on August 31, 2004.  Simmons proffers three pieces of evidence which she claims prove that Fujicolor's reasons are pretextual.  Simmons relies first on what she describes as Meads' "misrepresentation" to Rasco that she was scheduled to return to work on August 31, 2004, but the record indicates that Simmons'

scheduled return date was in fact August 31, and that Meads'
calendar was an inaccurate representation of Simmons' actual work
schedule because Meads removed Simmons' name from the entire
calendar upon the granting of her FMLA leave.   The record is
unclear as to whether Meads distinguished between the calendar and
the actual schedule when she informed Rasco of Simmons' absence on
August 31.  Undeniably, Meads had a duty to report that Simmons did
not attend work as *actually scheduled* per the Leave of Absence
Request Form and the correspondence from Rasco, and Fujicolor had
a right to terminate Simmons for, among other violations, this
failure to appear.   To the extent Simmons relies on any
representation regarding the written calendar, she has not
introduced meaningful proof of discriminatory intent.  Simmons next
proffers the temporal proximity of her FMLA leave to her
termination, but this argument suffers from the logical flaw
discussed above.  Finally, Simmons relies on what she describes as
record evidence that Meads "had it in for" her.  No reasonable jury
could infer discrimination merely from Meads' frustration over
Simmons' chronic violations of personnel policies or Meads' offhand
commentary regarding Simmons' improving condition.  Simmons has not
created a genuine issue of material fact as to the legitimacy of
her termination.   Fujicolor's motion for summary judgment as to
Simmons' retaliation claim is due to be granted.

### III. Motion to Strike

Fujicolor also moves to strike two portions of the affidavit attached to Simmons' motion for summary judgment.  The first portion claims that Simmons' period of incapacity lasted more than three days, a fact which is amply supported by Dr. Davis' clinic notes.  The second portion relates to Simmons' awareness of her rights under the FMLA, but, when read in conjunction with the other record evidence, does not create a genuine issue as to whether Fujicolor provided her proper notice of these rights.  Neither portion of the affidavit is essential to the court's judgment, rendering moot Fujicolor's motion.

### *Conclusion*

In accordance with the foregoing, the court will enter a separate order denying Simmons' motion for summary judgment, granting in part and denying in part Fujicolor's motion for summary judgment, and mooting Fujicolor's motion to strike.

DONE this 25th day of May, 2006.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE